No. 12920

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

---

CARL W. HAYWOOD,

Plaintiff and Respondent,

-vs-

CAROLE L. HAYWOOD SEDILLO,

Defendant and Appellant.

---

Appeal from:  District Court of the Fourth Judicial District,
Honorable Jack L. Green, Judge presiding.

Counsel of Record:

For Appellant:

Julio K. Morales argued, Missoula, Montana

For Respondent:

Jordan, Cummings, Sullivan & Baldassin, Missoula,
Montana
Lee A. Jordan argued, Missoula, Montana

---

Submitted: April 10, 1975

Decided: MAY 23 1975

Filed: MAY 23 1975

*Thomas J. Kearney*
Clerk

Mr. Chief Justice James T. Harrison delivered the Opinion of the Court.

This is an appeal by defendant, Carole L. Sedillo, formerly Carole Haywood, from an order of the district court, Missoula County, denying her petition for modification of custody.

The parties, Carole Sedillo and Carl W. Haywood, were married in 1966 in Flagstaff, Arizona. Two children were born of this marriage, Carl David, born August 15, 1968, and Charles Willard, born June 2, 1970. Marital difficulties arose between the parties and they separated in January 1973, while residing in Missoula, Montana. Carole moved to Flagstaff with the children and lived there with her parents until May 18, 1973. On May 18, 1973, an argument arose between Carole, Carl and Carole's parents. As a result of this argument, Carole ceased living with her parents, left the children with her parents, and began living with her present husband, Rudy Sedillo. Carl then brought the children back to Missoula.

Carl commenced divorce proceedings in Missoula on June 18, 1973. Although Carole was personally served in Arizona with the complaint and summons, a default decree was entered on July 23, 1973, granting Carl an absolute divorce, custody of the children, and settling their property rights.

After having been served with the complaint and summons and prior to the entry of default, Carole returned to Missoula and on the morning of July 17, 1973, in the words of the district court she:

> "surreptitiously, and without the knowledge or
> consent of the plaintiff did, against the will
> of the plaintiff, and by stealth and force take
> the minor children of the parties hereto from
> the plaintiff's custody and control and force-
> fully remove them from the baby-sitter's care
> which plaintiff had left them with when he went
> to work * * *."

Carole removed the children from the State of Montana. Carl did not learn the children's whereabouts until two weeks later when, upon learning of the custody award, Carole left the children with her parents and asked them to call Carl. Carl then brought the children back to Montana.

Carole married her present husband on April 19, 1974. Shortly thereafter, Carole returned to Missoula. The instant petition to modify custody was filed May 3, 1974. Two separate hearings were held before the district court. The first, held May 14, 1974, at which Carol and her husband testified, was continued in order to permit Carl time to take depositions of persons in Arizona. The second, at which Carl presented his evidence, was held July 8, 1974. This Court has been provided with a transcript of the first hearing and a statement of the evidence, pursuant to Rule 9(c), M.R.App.Civ.P., of the second hearing.

At the close of the evidence at the second hearing, the district court ruled from the bench in the presence of counsel for both parties that he was denying Carole's petition. The order was reduced to writing and filed two days later. However, no notice of entry of judgment, as required by Rule 77(d), M.R. Civ.P., was ever served upon Carole. Carole filed notice of appeal from the district court's order on September 6, 1974.

Three issues are presented on appeal:

(1) Whether the notice of appeal was filed within the time permitted by Rule 5, M.R.App.Civ.P.?

(2) Whether Carole is entitled to custody as a matter of law based upon the "tender years" presumption of section 91-4515, R.C.M. 1947?

(3) Whether the welfare of the children is best served by granting custody to Carl?

As a preliminary matter, we must first determine whether this Court has jurisdiction to hear this appeal. Rule 5, M.R. App.Civ.P. reads:

> "The time within which an appeal from a judgment or an order must be taken shall be 30 days from the entry thereof, except that in cases where service of notice of entry of judgment is required by Rule 77(d) of the Montana Rules of Civil Procedure the time shall be 30 days from the service of notice of entry of judgment * * *."

Rule 77(d), M.R.Civ.P., reads:

> "Within 10 days after entry of judgment in an action in which an appearance has been made, notice of such entry, together with a copy of such judgment or a general description of the nature and amount of relief and damages thereby granted, shall be served by the prevailing party upon the adverse party."

The notice of appeal was filed 60 days after the district court ruled from the bench and 58 days after the order was reduced to writing and filed. Carl argues that since both counsel had actual notice of the court's ruling and since the law does not require idle acts, that no notice of entry of judgment was necessary and the time for appeal lapsed. Service of notice of the entry of judgment is not an idle act. In order to provide certainty in the law, some arbitrary point must be chosen from which the time to appeal may run. That point by the Montana Rules is the date of service of the notice of entry of judgment. No notice of entry of judgment having been served upon Carole, this Court has jurisdiction to hear this appeal.

In summary, Carole's contentions are that she has, since the divorce, remarried and settled down; that she now has the time to be a full-time mother; that the children want to live with her; and, that outbursts of violence on the part of Carl show he is unfit to have custody.

We shall examine the evidence presented to the district court:

- 4 -

The earning capacities of both Rudy and Carl were thoroughly explored. Rudy is finishing his college education with a major in business accounting. He is working for the post office as a mail clerk, full-time, at $4.73 per hour, while attending night school part-time. He receives benefits under the G.I. Bill of $261 a month while attending school, for which he has 12 months left, and a disability compensation from the Navy of $77 a month. Upon graduation, he intends to work for an accounting firm for two years and then attend law school. Carl is a forester by occupation, earning $1,200 a month. At the time of the second hearing, he had a new job with Potlatch Corporation in Idaho, scheduled to start the following August, paying $1,500 a month. Much was made of the fact that Rudy is in the process of buying his own three bedroom home. Oral testimony and photographs were introduced bearing on the neighborhoods of the homes of both Rudy and Carl. The district court was in a position to determine which was the better environment for the children.

Carole contends that, being remarried and settled down, she now has the time to be a full-time mother and give the children a normal family relationship. The evidence showed that Carl leaves the children with baby-sitters while at work. At first the children were left at the baby-sitter's residence, later Carl obtained a live in baby-sitter so that the boys could be in their own home. With his old job, Carl was away from the boys twelve nights a month. Although he admits his new job will require some traveling, it will be for one day only and he will have to stay overnight only occasionally.

However, the only evidence in the record as to any activities Carole had with the children was during the two days in July 1973, when Carole and Rudy played a little softball with them, took them to bowling practice and took them to the Dairy

Queen. During the period from July 1973, to May 1974, Carole made no attempt to see the children and did not send them cards or gifts on their birthdays, at Christmas, or any other time. On the other hand, the record is replete with evidence of the activities that Carl and the boys pursued together. Christina Frankenfield testified Carl spends more time with his children than any father she has ever known; that they go everywhere with their father; and, that there is good communication between the children and their father. Diane Sailer testified Carl does everything with the boys and that his whole life appears to involve the children.

Carole contends the children want to live with her, rather than their father. In support of this she and Rudy testified the boys, on several occasions told them they wanted to go with her. The evidence also showed that in the two weeks prior to the first hearing, Carole visited the boys nearly everyday and on each occasion brought candy or small presents in an attempt to influence the children. The baby-sitter overheard Carole telling the boys that if anyone asked them who they wanted to go with or be with, they should be sure and say they wanted to be with their mother, but not to repeat this conversation to anyone, as it was to be "their secret".

Many witnesses testified the children rarely spoke of their mother and were indifferent toward her when she was gone. The witnesses related that when Carole was in town the boys became nervous, excitable, irritable and easily upset, the symptoms diminishing once Carole had gone. Much testimony was introduced bearing on the mutual love and affection between Carl and the boys. Diana Danielson testified the boys constantly talk about their father and discuss in great detail the activities they engage in with him and grow excited when Carl is due home from work.

Carole alleges Carl's outbursts of temper and physical abuse show that he is unfit to have custody. In her testimony she alleged two instances in 1967 and 1970, where Carl struck her and two instances May 18, 1973 and May 11, 1974, where Carl had her around the neck. Carl gave a different perspective on the latter incidents. The credibility of such allegations was for the district court. Even if believed, the incidents did not relate to the children. The witnesses testified that Carl is a firm disciplinarian, but loving. Carole herself testified that Carl had never mistreated the children.

No purpose would be served in reciting further the evidence before the district court, some of which favored Carl, some of which favored Carole. As can be seen from the evidence heretofore recited, the evidence was not so equal that the district court was required to award custody to the mother pursuant to section 91-4515, R.C.M. 1947. There was substantial evidence to support the award of custody when that evidence is viewed in the light most favorable to Carl, the prevailing party. This Court will sustain such determination by the district court based upon substantial conflicting evidence. In Eliason v. Eliason, 151 Mont. 409, 416, 443 P.2d 884, this Court said:

> "The trial court, having observed and considered the appearance of the witnesses upon the witness stand, their manner of testifying, their apparent candor or want of candor, in addition to the testimony itself, is in a better position than this Court to decide questions of credibility of witnesses and the weight to be given their testimony."

The order of the district court is affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
    Justices