No. 86-275

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

STEPHEN J. KENNEY,

Plaintiff and Appellant,

-vs-

RUDY KOCH, SIMON KUNTZ, AND K & K
DEVELOPMENT, INC.,

Defendants and Respondents.

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Big Horn,
The Honorable G. Todd Baugh, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Stanton, Hovland & Torske; James E. Torske,
Hardin, Montana

For Respondent:

Wright, Tolliver & Guthals; Joel E. Guthals,
Billings, Montana

Submitted on Briefs: March 5, 1987

Decided: May 28, 1987

Filed: MAY 28 1987

*Ethel M. Harrison*

Clerk

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.

Appellant, Stephen J. Kenney appeals from a judgment from the Thirteenth Judicial District of the State of Montana awarding him $32,120.00 in damages for wrongful conversion of his property and also awarding respondents, K & K Development, Inc., $500.00 in damages for trespass.

We reverse in part and remand for re-evaluation of damages consistent with this Opinion.

We are asked to decide six issues. Issue number one is raised by respondents and questions the jurisdiction of this Court because appellant did not comply with the Montana Rules of Civil Procedure. The remaining five issues are raised by the appellant and go to the judgment of the District Court. The six issues are:

1. Does this Court have jurisdiction to hear this appeal because of the failure of the appellant to timely file notice of appeal and failure to file transcript of the proceedings in accordance with the Montana Rules of Civil Procedure?

2. Did the District Court abuse its discretion by awarding damages based on $3.25 per cubic yard of gravel as the highest market value pursuant to § 27-1-320, MCA?

3. Was appellant entitled to an award for reasonable time and money expended in the pursuit of his property pursuant to § 27-1-320, MCA?

4. Did the District Court err by not including attorney fees in its award for appellant under § 27-1-320, MCA?

5. Did the District Court err by awarding damages for trespass to respondents?

6. Did the District Court err by awarding damages based on equity rather than § 27-1-320, MCA?

The personal property, subject of this dispute, is 7,390 cubic yards of gravel of the specification "3/4 minus" required by appellant to meet many of his contractual obligations. In 1971, appellant refused an offer by the owner, Robert Downs, to sell the gravel for $6.00 per cubic yard. Later, in February, 1981, Downs offered to sell the gravel for $3.25 per cubic yard and appellant accepted. Appellant did not record notice of his interest in the gravel. The gravel had been stockpiled on Downs' property located within eyesight of appellant's general contracting business in Hardin, Montana. After selling the gravel to appellant, Downs conveyed the real property on which the gravel was located to Ernie DeVries to satisfy a pre-existing debt.

In October, 1981, respondents Koch and Kuntz became interested in purchasing the land where the gravel was still stockpiled. Koch and Kuntz negotiated with DeVries, his attorney and Downs' real estate broker for the sale of the land. It was during these negotiations that the question of ownership of the stockpiled gravel was raised. Koch and Kuntz wanted to acquire the gravel to use in the development of the property. A search through the title records produced only an expired State of Montana stockpiling agreement.

On October 23, 1981, the respondents purchased the land on a contract for deed. The contract was silent as to the ownership of the gravel and Koch and Kuntz received no bill of sale for it. After the sale, Koch and Kuntz decided to lock the gate and cut off access to the gravel in an attempt to determine who, if anyone, owned the gravel and to protect themselves from any liability from theft. The same day that Koch and Kuntz chained and locked the gate to the property,

appellant met them on the road immediately adjacent to the stockpiled gravel and informed them of his ownership of the gravel. Koch and Kuntz asked for documentation and shortly thereafter their attorney formally requested verification of ownership from appellant.

On October 29, 1981, appellant provided the respondents' attorney with the cancelled check made out to Downs and with the vendor's invoice for the gravel which he received from Downs. Because there was no notice of interest on record, the invoice did not contain an exact legal description of the location of the stockpiled gravel, and because the State Highway Department was also making claims on some of the gravel on their land, Koch and Kuntz refused to honor appellant's claim. Koch and Kuntz did not contact Downs to inquire about the validity of appellant's ownership.

In November, 1981, appellant completed a contract with the City of Hardin for which 1,450 cubic yards of gravel, comparable to the gravel in question, was purchased for $16.50 per cubic yard. In April, 1982, appellant sold another 7,390 cubic yards of comparable gravel to the City of Hardin as part of another construction contract.

In June, 1982, appellant needed more grade "3/4 minus" gravel for a contract with Petty Ray GeoSource. To get the gravel which he purchased from Downs, appellant broke the padlock on the gate to Koch and Kuntz's property (now K & K Development, Inc.) and removed 10 semi-truck loads or 90 cubic yards of gravel. Appellant was paid $6.50 per cubic yard for these 90 cubic yards. Immediately thereafter, Koch and Kuntz, through their attorney, informed appellant that they did not consent to the removal of any gravel from their property and that he was trespassing.

On July 29, 1982, appellant filed a wrongful conversion claim under § 27-1-320, MCA. In accordance with the

- 4 -

provisions of that statute, appellant opted to receive the highest market value of the gravel between the time of conversion and the date of the verdict, without interest, instead of the fair market value of the gravel at the time of conversion with interest. Appellant also requested reasonable costs of pursuing his property and attorney fees.

On August 19, 1982, due to the dispute over the gravel, DeVries traded property with Koch and Kuntz to relieve them of having to prove ownership of the gravel.

The case was heard on June 4, 1985 in a non-jury trial. The District Court judgment awarded appellant: $23,725.00 for the conversion of 7,300 cubic yards of gravel valued at $3.25 per cubic yard as the highest market value between the date of conversion and December 18, 1985, the date of the verdict; $8,395.00 for incidental and consequential damages; 10% interest from the date of the judgment until paid; nothing for time and money spent in pursuit of his property; and nothing for attorney fees. The judgment further ordered that appellant pay K & K Development, Inc. $500.00 in "nominal" damages for trespass.

Following this judgment of October 25, 1985, both parties filed post-trial motions. These motions were all denied by an order dated January 15, 1986. No notice of entry of judgment was filed until March 26, 1986, when a notice of appeal was also filed by appellant.

Before considering the facts and applicable law, we must first consider the question of whether this Court has jurisdiction to hear this appeal. To do that, we must begin with an analysis of Rule 77(d), M.R.Civ.P., which states in part: "Within 10 days after entry of judgment in an action in which an appearance has been made, notice of such entry,. . . shall be served by the prevailing party upon all parties who have made an appearance . . ."

Rule 5, M.R.App.Civ.P. provides that when Rule 77(d) is applicable, the 30 day limitation on filing notice of appeals begins to run upon service of notice of entry of judgment.

The history of Rule 77(d) tells us that the obligation of who is to serve notice of entry of judgment has fluctuated since the rule's inception. Prior to 1975, Rule 77(d) required that notice of entry of judgment be served by the prevailing party on the adverse parties to the case. From 1975 to 1984, such notice was to be served by the clerk of court on all adverse parties. The reason for this change was to substitute reliable proof of mailing "for the interminable wrangling between counsel concerning whether prevailing counsel had in fact mailed the notice of entry of judgment to opposing counsel and if so, on what date." Pierce Packing Co. v. District Court (1978), 177 Mont. 50, 53, 579 P.2d 760, 761.

In 1984, Rule 77(d) was amended to require that the "prevailing party serve notice upon all parties who have made an appearance" as preferable to the old rule requiring the clerk of court to serve such notice.

This Court has held that it is the filing of the notice of entry of judgment that begins the running of the time limitations for filing a notice of appeal. Actual notice is not sufficient. "This rule has been technically applied to assure proper notice and an understanding of when the time for appeal begins to run." Morrison v. Higbee (Mont. 1983), 668 P.2d 1029, 1032, 40 St.Rep. 1031, 1034.

In spite of this statutory language and case law, respondents argue that this Court lacks jurisdiction to hear this appeal due to untimely filing of notice of appeal. Respondents argue that on January 15, 1986, when the District Court denied all post-trial motions, the ten day period in

which to serve notice of entry of judgment pursuant to Rule 77(d) began to run.

However, in Haywood v. Sedillo (1975), 167 Mont. 101, 535 P.2d 1014, neither party ever filed a notice of entry of judgment. Notice of appeal was filed 58 days after the District Court's judgment was filed. Even though both parties in Haywood had actual notice of the court's ruling, this Court held that:

> Service of notice of the entry of judgment is not an idle act. In order to provide certainty in the law, some arbitrary point must be chosen from which the time to appeal may run. That point by the Montana Rules is the date of service of the notice of entry of judgment.

535 P.2d at 1016.

In the present case, a notice of entry of judgment was filed 71 days after judgment on the post-trial motions was filed. The obligation to file the notice was on the prevailing party. If a prevailing party neglects to file a notice of entry of judgment, that party cannot then claim untimely filing of a notice of appeal by a non-prevailing party who wishes to appeal.

To determine whether Rule 77(d) was violated, we must resolve the question of who was the "prevailing party" in the District Court decision.

Appellant Kenney originally brought suit against respondents Koch and Kuntz for conversion of his property and resulting damages. The judgment granted to appellant was $23,725.00 for his conversion claim and $8,395.00 for consequential damages. There was no award for time and money expended in pursuit of his property nor for attorney fees. Respondents were awarded $500.00 for their trespass counterclaim.

Although the monetary amount of a judgment is not decisive, the award of money is an important consideration when deciding who prevailed. E.C.A. Environmental Management v. Toenyes (Mont. 1984), 679 P.2d 213, 217-218, 41 St.Rep. 388, 392-393.

Both parties received a judgment for money. Appellant was successful in his claim for conversion. Respondents were successful in their claim for trespass. Both parties filed post-trial motions, all of which were denied. In Jorden v. Elizabethan Manor (1979), 181 Mont. 424, 434, 593 P.2d 1049, 1055, we stated that "[a] prevailing party is the one who has an affirmative judgment rendered in his favor at the conclusion of the entire case." In this case, both parties had an affirmative judgment rendered in their favor, so both can be considered to have prevailed. Either party could have made the requisite filing and both were responsible for the failure to technically comply with Rule 77(d) and file a notice of entry of judgment by January 27, 1986.

In Pierce Packing, where neither party observed the requirements of the Rules of Civil Procedure, we stated that "where counsel for petitioner seeks to enforce the technical requirements of the Rules against opposing counsel, we will apply the same standard to petitioner and require the same technical compliance of him." 579 P.2d at 761.

The notice of entry of judgment was filed on March 26, 1986. Appellant filed his notice of appeal the same day. In this case, March 26, 1986 began the running of time limitations for the filing of an appeal. We hold that the appeal was timely filed.

Respondents argue further that appellant failed to timely order a transcript of the proceedings. The record shows that the District Court granted a request for an extension of time to the court reporter to complete a

transcript of the proceedings. All pertinent transcripts and records were before this Court at the time of review of respondents' request for dismissal and we hold that this appeal is properly before this Court. In view of the foregoing, we hold that this Court has jurisdiction to hear this case.

We now consider the second issue as to whether the District Court abused its discretion by awarding appellant damages based on an amount of $3.25 per cubic yard of gravel as the "highest market value" pursuant to § 27-1-320, MCA.

We hold that the court did err.

The value of the gravel at issue is a question of fact. The standard of review for this Court for findings of fact are that unless "clearly erroneous," we will not set them aside. Rule 52(a), M.R.Civ.P. The same rule gives deference to the District Court's direct observance of the witnesses and the weight to be given their testimony.

Section 27-1-320, MCA, states as follows:

The detriment caused by the wrongful conversion of property is assumed to be: (a) the value of the property at the time of its conversion with the interest from that time or, when the action has been prosecuted with reasonable diligence, the highest market value of the property at any time between the conversion and the verdict without interest, at the option of the injured party; and

(b) a fair compensation for the time and money properly expended in pursuit of the property . . .

The language of § 27-1-320, MCA, has been virtually unchanged since 1895. The presumption contained in this statute is a disputable one. It may be overcome by evidence of peculiar circumstances that result in greater or less injury than the statute contemplates. "[I]n the absence of proof of such special circumstances, the statutory rules govern." Graham v. Clark's Fork National Bank (Mont. 1981), 631 P.2d 718,

- 9 -

720, 38 St.Rep. 1140, 1142-43, citing Ferrat v. Adamson, et al. (1917), 53 Mont. 172, 163 P. 112.

Appellant opted, under § 27-1-320, MCA, to recover "the highest market value of the property at any time between the conversion and the verdict without interest" instead of the "value of the property at the time of its conversion with the interest from that time." The District Court found that appellant's gravel was wrongfully converted as of early November, 1981. There is no evidence on record of any special circumstances which proved greater or lesser injuries than those for which this statute provides.

Testimony was heard as to the "highest market value" of the gravel. This Court has held that "market value" means the price which "a buyer willing but not obligated to buy would pay a seller willing but not obligated to sell, but with full knowledge of all pertinent facts affecting value." In re Estate of Powers (1970), 156 Mont. 100, 103, 476 P.2d 506, 507-08. See also State Dept. of Highways v. Schumaker (1979), 180 Mont. 329, 590 P.2d 1110.

An expert witness testified that the value of the gravel was $3.25, which was the original purchase price paid by appellant. Appellant testified that he sold 90 cubic yards of the gravel at $6.50 per cubic yard in June, 1982. He also testified that he sold comparable gravel to the City of Hardin for $16.50 per cubic yard. This price included the standard overhead cost of transporting the gravel for 50 cents per cubic yard mile. In appellant's opinion, the gravel in question had a fair market value at the time of conversion of $15.15 per cubic yard.

The District Court found that, excluding overhead and profit, the highest market value of the gravel in question was $3.25 per cubic yard. This finding is contrary to the evidence. Testimony showed that appellant sold the gravel he

purchased at $3.25 per cubic yard for various prices greater than the purchase price, up to a sale price of $16.50 per cubic yard. Mathematically the market value is obviously between the upper and lower limits of these two figures. In opting to forego interest since November, 1981, on the value of his gravel at the time of conversion, appellant relied on the statutory provision providing for "highest market value" without interest. "[A] plaintiff in an action for conversion may, by waiving interest, elect any date between the date of the conversion and the date of the trial on which to lay his damages." Klus v. Lamire (1924), 71 Mont. 445, 446, 230 P. 364, 365. The substantial credible evidence on record supports appellant's contention that $3.25 per cubic yard is not the "highest market value" of the gravel at "anytime between the conversion and the verdict." In Broadwater Farms Co. v. Broadwater Elevator Co. (1921), 61 Mont. 215, 201 P. 687, this Court held that where a plaintiff in an action for conversion has brought himself within the rule requiring diligence in prosecuting the action, the fact that the measure of damages recoverable under it may be inequitable and unjust cannot deprive him of his right to recover the highest market value of the property at any time between the conversion and the verdict, at plaintiff's option, which he might have obtained but for the wrongful act of defendant. Profit is a factor in any property's fair market value. It follows that even more profit would be included in "highest" market value. It was an error for the District Court to estimate profit and subtract it from amounts testified to as being the highest market value of the gravel.

Respondents, Koch and Kuntz' actions wrongfully kept appellant's gravel from him for nearly a year. The record shows varying values for gravel, comparable to the gravel in question, dependent upon the business acumen of the buyer.

The $3.25 per cubic yard is the lowest value testified to for comparable gravel. Appellant testified that he sold a lower grade of gravel for $3.50 per cubic yard. It was clearly erroneous and an abuse of the District Court's discretion to find that the "highest market value" for the gravel between November, 1981, when the gravel was found to have been wrongfully converted, through October, 1985, when the verdict was reached, was $3.25 per cubic yard.

We remand for a redetermination of damages in accordance with this decision.

The next issue raised by appellant is whether appellant is entitled to reasonable expenses incurred in the pursuit of recovering possession of his property under § 27-1-320, MCA.

Section 27-1-320 provides that "the detriment caused by wrongful conversion of personal property is presumed to be:
. . . (b) a fair compensation for the time and money properly expended in pursuit of the property."

Appellant testified that he spent considerable time attempting to regain his property from the defendants. He further testified that he rounded off the estimated time spent at 100 hours. Since he has never charged for his labor at an hourly rate, he picked $100.00/hour as commensurable with his productivity. At trial an objection was made by defendant that this statement of his hourly worth was conclusory. The court overruled the objection. Appellant now contends that the court is estopped from rejecting the testimony as "speculative" and refusing to award appellant anything for the pursuit of his gravel, as was done in the District Court's decision.

The issue here is not whether the testimony was speculative or conclusory. The issue is whether appellant is entitled to reasonable expenses incurred in pursuit of his property. The District Court held that he was entitled to

fair compensation for the time and money he properly expended in the pursuit of his property. We agree.

It was an abuse of the court's discretion to find appellant was entitled to compensation under § 27-1-320(b), MCA, and then award appellant nothing. On remand, fair compensation must be determined.

Tied to the preceding issue is the question of whether attorney fees are properly included as "time and money" properly expended. The District Court denied appellant attorney fees based on the lack of a contract or statute providing for them. The general rule is that "in absence of statute or contract, attorney fees will not be awarded." Martin v. Randono (Mont. 1981), 623 P.2d 959, 962, 38 St.Rep. 209, 212. It is well established in Montana that the term "costs" does not include attorney fees, 623 P.2d at 962; Tomten v. Thomas (1951), 125 Mont. 159, 165, 232 P.2d 723, 727. Section 27-1-320, MCA does not explicitly state that attorney fees are to be considered in an award of time and money expended in pursuit of appellant's property. Neither does the statute contain the term "costs." However, the statutory terms "expenses" and "money expended" mean virtually the same thing as "costs." Precedent tells us that "costs" do not contemplate attorney fees and we hold that attorney fees were properly denied by the District Court.

The fifth issue raised by appellant is whether the District Court erred by awarding damages for trespass to respondent.

Whether trespass occurred and whether there were consequential damages to respondent's property is a question of fact to be determined by the trier of fact. The District Court determined that there was substantial evidence to sustain a charge of trespass. The court found further that a "nominal" award of $500.00 for damages was appropriate. The

- 13 -

record does not contradict this finding and we affirm the award.

The final issue of whether damages should be based on equity or whether an award must be made in accordance with § 27-1-320, MCA, has been adequately addressed and we need not discuss it further.

The decision of the District Court is reversed and remanded for a re-evaluation of damages consistent with this Opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices