No. 99-262

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 208N

STATE OF MONTANA,

Plaintiff and Respondent,

v.

TRACY MICHAEL PFAU,

Defendant and Appellant.

APPEAL FROM: District Court of the Twenty-First Judicial District,

In and for the County of Ravalli,

The Honorable Jeffrey H. Langton, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

David E. Stenerson; Stenerson Law Office, Hamilton, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; Micheal S. Wellenstein,

Assistant Attorney General; Helena, Montana

George H. Corn, Ravalli County Attorney, Hamilton, Montana

Submitted on Briefs: March 30, 2000

Decided: August 7, 2000

Filed:

_____

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Tracy Michael Pfau (Pfau) appeals from the Order Regarding Restitution entered by the Twenty-First Judicial District Court, Ravalli County, which, among other things, imposed restitution for investigative costs in the amount of $5,560. We reverse and remand.

¶3 The sole issue on appeal is whether the District Court erred in ordering Pfau to pay investigative costs as restitution.

## BACKGROUND

¶4 Sometime after July of 1997, a confidential informant reported to the State Compensation Insurance Fund (State Fund), the workers' compensation carrier paying Pfau benefits for an employment-related injury, that Pfau was boasting of receiving workers' compensation benefits while working. Agent Merle Vines of the Montana Criminal Investigation Bureau conducted an investigation which substantiated the report and determined that Pfau had received $5,520 in workers' compensation benefits to which he was not entitled while working.

¶5 The State of Montana (State) charged Pfau with felony theft in violation of § 45-6-301 (5)(b), MCA, and felony tampering with witnesses and informants in violation of § 45-7-206(1)(a), MCA. Pursuant to a plea agreement, Pfau ultimately pled guilty to the felony theft charge and the tampering with witnesses and informants charge was dismissed. The District Court subsequently sentenced Pfau and entered judgment. The sentence included

payment of restitution, with the court reserving jurisdiction to determine the amount of restitution at a later time.

¶6 At the restitution hearing, Pfau did not dispute his obligation to pay $5,520 restitution for the workers' compensation benefits improperly received. He contended, however, that he could not be required to pay restitution for the costs of the investigation which led to the charges. With regard to those costs, Pfau and the State stipulated that the Workers' Compensation Division (Division) had requested the Department of Justice (Department) to investigate this matter; Department investigators spent 139 hours preparing the case; the Department charges the Division $40 per hour and, as a result, the cost of investigation of this matter was $5,560; and the Division does not pay the Department on a per hour or per case basis, but pays $300,000 per year from its budget to the Department for expenses in investigations such as the one conducted in this case.

¶7 The District Court determined that "the State" was a victim for purposes of restitution under § 46-18-243(2)(a)(iii), MCA, and that the investigative costs constituted a pecuniary loss as defined in § 46-18-243(1)(b), MCA. The court also referenced the "broad array" of special damages defined as pecuniary loss in § 46-18-243(1)(a), MCA, including "out-of-pocket losses." On the basis of those statutes, the District Court concluded that the costs of investigation were out-of-pocket expenses recoverable as restitution. Accordingly, it ordered restitution in the amounts of $5,520 for improperly received benefits and $5,560 for costs of investigation, plus $1,108 in administrative fees.

¶8 Pfau appeals only that portion of the Order Regarding Restitution relating to investigative costs.

## STANDARD OF REVIEW

¶9 "This Court reviews a criminal sentence only for legality (i.e., whether the sentence is within the parameters provided by statute)." *State v. Montoya*, 1999 MT 180, ¶ 15, 295 Mont. 288, ¶ 15, 983 P.2d 937, ¶ 15.

## DISCUSSION

¶10 **Did the District Court err in ordering Pfau to pay investigative costs as restitution?**

¶11 Pfau contends that Montana's restitution statutes do not authorize the imposition of restitution for the investigative costs on the facts of this case. We agree.

¶12 At the outset, we observe that, although the State Fund is clearly the victim with regard to the actual loss of the benefits Pfau received improperly, the record is somewhat confused regarding the identity of the "victim" for purposes of the investigative costs. In this regard, the parties' stipulation, the State's arguments at the restitution hearing and Pfau's brief on appeal identify the Division as the entity suffering the alleged losses in the amount of the investigative costs; the State's brief, on the other hand, identifies the State Fund. The only direct evidence of record on the question is a Victim Impact Statement attached to the presentence investigation report which indicates that the State Fund provides the budget for the Department's investigative costs and estimates those costs in this case at $5,560. For this reason, we assume *arguendo* that identification of the Division in the parties' stipulation is an inadvertent error and address the case with the State Fund as the victim for purposes of determining whether the District Court erred in requiring Pfau to pay the investigative costs as restitution.

¶13 When a sentencing court finds that the victim of an offense "has sustained pecuniary loss as a result of the offense," it generally must require payment of full restitution. *See* §§ 46-18-201(5) and 46-18-241(1), MCA. Thus, if the State Fund is a victim and sustained a pecuniary loss, it is entitled to full restitution absent considerations not at issue here.

¶14 For restitution purposes, a "victim" includes

> a governmental entity that suffers loss of property as a result of the commission of an offense in this state or that incurs costs or losses during the commission or investigation of an escape, as defined in 45-7-306, or during the apprehension or attempted apprehension of the escapee[.]

Section 46-18-243(2)(a)(iii), MCA. Pfau concedes that the State Fund suffered a loss of property corresponding to the $5,520 in benefits he received improperly and, therefore, is a victim for purposes of restitution in that amount. He contends, however, that the remainder of the § 46-18-243(2)(a)(iii), MCA, definition is inapplicable here and, as a result the State Fund is entitled to restitution for the $5,520 loss of property only. His analysis in this regard is flawed.

¶15 By its terms, § 46-18-243(2)(a)(iii), MCA, merely defines the word "victim" as used

in other restitution statutes. It does not define the remedy. As set forth above, the remedy for a victim "who has sustained pecuniary loss" as the result of a criminal offense is "full restitution." *See* §§ 46-18-201(5) and 46-18-241(1), MCA. Thus, the State Fund is a victim, by virtue of being a governmental entity which suffered a loss of property by virtue of Pfau's criminal offense of felony theft of workers' compensation benefits. The question remains, however, whether it suffered a pecuniary loss in the amount of the investigative costs.

¶16 Section 46-18-243(1), MCA, defines "pecuniary loss" as

> (a) *all special damages*, but not general damages, substantiated by evidence in the record, that a person could recover against the offender in a civil action *arising out of* the facts or events constituting the offender's criminal activities, *including* without limitation . . . *out-of-pocket losses*, such as medical expenses, loss of income, expenses reasonably incurred in obtaining ordinary and necessary services that the victim would have performed if not injured, expenses reasonably incurred in attending court proceedings related to the commission of the offense, and reasonable expenses related to funeral and burial or crematory services; and

> (b) reasonable *out-of-pocket expenses incurred by the victim in* filing charges or in *cooperating in the investigation* and prosecution of the offense.

(Emphasis added.) Pfau contends that the District Court erred in determining that the "costs of investigation are out-of-pocket expenses and as such are recoverable as restitution" under this definition of pecuniary losses.

¶17 We previously have permitted restitution for an employer's out-of-pocket expenses associated with payments to an accounting firm, employees, labor contractors, a software company, and a locksmith whose services were necessary to reconstruct books and repair damage as a result of an employee's criminal forgeries. *See State v. Brewer*, 1999 MT 269, ¶ 23, 989 P.2d 399, ¶ 23, 56 St.Rep. 1090, ¶ 23. We determined that the payments were special damages contemplated by § 46-18-243(1), MCA, as "pecuniary loss" in the form of "out-of-pocket losses." *Brewer*, ¶¶ 19 and 23.

¶18 The losses in *Brewer* are distinguishable from the costs of investigation in the present case, however. In *Brewer*, the employer actually paid the amounts at issue and the amounts actually arose out of the employee's criminal acts. Consequently, the amounts

constituted out-of-pocket expenses under the common understanding of that phrase. Here, the parties stipulated that the State Fund "does not pay the Department of Justice on a per hour or per case basis, but instead pays $300,000 per year from its budget . . . for expenses in investigations such as the one conducted in this case." In other words, the State Fund did not pay out any investigative costs arising out of Pfau's criminal acts. It pays the Department a flat, budgeted yearly amount for investigative expenses.

¶19 On these facts, we conclude that the $5,560 for investigative costs is not a pecuniary loss as defined in § 46-18-243(1), MCA. As a result, we hold that the District Court erred in ordering Pfau to pay investigative costs as restitution.

¶20 Reversed and remanded for further proceedings consistent with this Opinion.

/S/ KARLA M. GRAY

We concur:

/S/ J. A. TURNAGE

/S/ TERRY N. TRIEWEILER

Justice William E. Hunt, Sr. specially concurs.

¶ 21 I concur in the result of the majority opinion but not with the analysis which in effect makes the State a collection agency. The State is always a "victim" of any crime committed against either an agency or an individual or the property of either, and the courts and the agency should not be involved in recovering money for efforts that have been paid for by taxes. If there is merit in further punishing a wrongdoer by charging him the cost of law enforcement, it can be done in the same way other victims are required to make collection and that is through civil actions. I disagree with the analysis of the majority and I disagree with the dissent of Justice Nelson.

/S/ WILLIAM E. HUNT, SR.

Justice James C. Nelson dissents.

¶22 I disagree with the majority's conclusion that State Fund's costs of investigation are not recoverable under § 46-18-243(1)(a), MCA.

¶23 Under this section the crime victim is allowed to recover "all special damages . . . that a person could recover against the offender in a civil action arising out of the facts or events constituting the offender's criminal activities . . . ." Section 46-18-243(1)(a), MCA. The civil equivalent of the felony theft charge to which Pfau pled guilty in this case is conversion. *See Gebhardt v. D.A. Davidson* (1983), 203 Mont. 384, 661 P.2d 855, wherein we stated:

> Conversion has been defined as a distinct act of dominion wrongfully exerted over one's property in denial of, or inconsistent with, the owner's right . . . or an unauthorized assumption of dominion over personalty in hostility to the right of the owner.

*Gebhardt*, 203 Mont. at 389, 661 P.2d at 858 (citations omitted).

¶24 The damages for conversion are set out in § 27-1-320, MCA, and, among other things, include "a fair compensation for the time and money properly expended in pursuit of the property." Section 27-1-320(1)(b), MCA. *See accord Eatinger v. Johnson* (1994), 269 Mont. 99, 105, 887 P.2d 231, 235 and *Kenney v. Koch* (1987), 227 Mont. 155, 165, 737 P.2d 491, 497.

¶25 It is undisputed that, here, the State Fund expended time and money in pursuit of and in recovery of the worker's compensation benefits that Pfau obtained unlawfully and as a direct result of his theft. In a civil conversion action, the State Fund would be entitled to recover the costs of its investigation as an element of special damages. Section 27-1-320(1)(b), MCA. Accordingly, the law also clearly allows State Fund as a crime victim restitution for these same costs as a "pecuniary loss." Section 46-18-243(1)(a), MCA.

¶26 The majority errs in interpreting the "out-of-pocket losses" language of § 46-18-243(1)(a), MCA, as limiting special damages. In fact, this reference does no such thing. As the plain language of the statute provides, special damages include *without limitation* out-of-pocket losses.

¶27 It is good public policy to require those who rip off the workers' compensation system to pay the costs incurred in recovering their wrongfully-obtained benefits. Our present restitution laws allow for such recovery, and I would so hold.

¶28 I would affirm the decision of the District Court and dissent from our failure to do so.

/S/ JAMES C. NELSON