194 N.J. Super. 163 (1984)
476 A.2d 797
THE BANK OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
FRANCIS PULINI, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 1, 1984.
Decided May 15, 1984.
*164 Before Judges KING, DREIER and BILDER.
Robert N. Braverman argued the cause for appellant (Kasen & Kasen, attorneys; Robert N. Braverman, on the brief).
Mark E. Herrera argued the cause for respondent (Fellheimer, Eichen & Goodman, attorneys; Mark E. Herrera, on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
Defendant appeals from the denial of his motion to vacate the defaults entered against him, and from an order allowing the entry of judgment out of time. The judgment entered was for $7,146.83 plus costs representing the balance due on a loan made by plaintiff to one Sal Richetti to purchase a used 1979 Cadillac. Defendant co-signed the note and security agreement as a co-maker, and plaintiff has called upon him to pay the balance due, since Richetti has disappeared and taken the car. The defendant's basic defense is that plaintiff failed to perfect its security interest in the car and that it is now unavailable to be sold and thus reduce defendant's responsibility. Defendant further notes that since there had been a substantial down payment ($2,500), if the car were available there would be little or no balance that would be due from defendant after disposition of the security.
The loan had been made on October 31, 1980 in the amount of $6,598.22 plus finance charges of $1,519.78, with the first of 36 payments due December 15, 1980. By the summer of 1981, *165 plaintiff had filed its complaint in the Law Division alleging defendant's default under the terms of the note. Defendant allegedly was served July 29, 1981, but failed to answer the complaint. Default was entered October 8, 1981, and on February 17, 1982 plaintiff filed a motion to enter judgment out of time, but for some reason no action was taken on plaintiff's motion. On October 8, 1982 defendant filed a motion to vacate the entry of default, but this motion was denied. Defendant again on April 22, 1983 sought to vacate the entry of default and permit the filing of an answer out of time, but this motion also was denied. On June 28, 1983 plaintiff again filed a motion for the entry of a default judgment out of time, and defendant challenged that motion, requesting oral argument. On August 2, 1983 plaintiff's motion was granted. Unfortunately, we have been provided with neither a transcript of the motion (if it actually was argued), nor with any basis for the court's decision.
Two issues are raised in this case. First, should the default have been set aside, and, second, does defendant have a legally meritorious defense. As for setting aside a default judgment under R. 4:50-1, such application is "viewed with great liberality, and every reasonable ground for indulgence is tolerated to the end that a just result is reached." Marder v. Realty Construction Co., 84 N.J. Super. 313, 319 (App.Div. 1964), aff'd 43 N.J. 508 (1964). As to the setting aside of defaults that have not yet been reduced to judgment, R. 4:43-3 provides:
For good cause shown, the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with R.4:50.
Judge Pressler in her comment to R. 4:43-3 states:
The required showing for setting aside an entry of default pursuant to this rule is clearly less stringent than that imposed by R.4:50-1 for setting aside a default judgment. (Pressler, Current N.J. Court Rules, Comment R.4:43-3 (1984)).
Defendant in applying for the setting aside of the default had contended that he had no recollection of being served, that he had a meritorious defense against the bank, and that plaintiff *166 had been lax in even applying for the default and default judgment so that plaintiff was in no way harmed by defendant's late filing of an answer. With these reasons, and if a truly meritorious defense was advanced, the default should have been set aside. O'Connor v. Abraham Altus, 67 N.J. 106, 128-129 (1975).
We must examine defendant's proposed defense to determine its merit. Basically, defendant states that plaintiff failed to perfect its security interest in the collateral, permitting Richetti to leave the area with a clear certificate of ownership, and thus able to dispose of the car without accounting to either plaintiff or defendant. Defendant's status was clearly that of an accommodation maker, N.J.S.A. 12A:3-415(1); as such he is in the nature of a surety. See New Jersey Study Comment to N.J.S.A. 12A:3-415, paragraph 1. If defendant is called upon to pay the balance due on the loan, he has the right to be subrogated to the secured party's claim as to the collateral. Langeveld v. L.R.Z.H. Corp., 74 N.J. 45, 51 (1977). As the court there noted:
... The doctrine is an equitable one, designed to protect the surety's right of subrogation. Upon paying the debt, the surety is, as a matter of law, subrogated to all the creditor's rights against the principal debtor and is entitled to all benefits derivable from any security of the principal debtor that may be in the creditor's hands. The rule forbidding impairment of collateral has as its chief aim the protection of these potential benefits made available through subrogation.
Since defendant had the right to have this collateral assigned to him if he paid off the loan balance, the bank's failure to perfect its security interest impaired the value of that collateral to defendant. Under N.J.S.A. 12A:3-606(1)(b) defendant is discharged "to the extent that ... the holder ... unjustifiably impairs any collateral for the instrument given by ... the party ... against whom he has a right of recourse." As was noted in Langeveld:
... It is a well-recognized principle of the law of suretyship that a release of collateral held by a creditor, or its impairment by improper action or inaction on *167 his part, will extinguish the obligation of the surety, at least to the extent of the value of the security released or impaired. This rule has come to be accepted as the law of our State ... [N.J.S.A. 12A:3-606] is essentially a restatement of this rule, as the courts that have examined it have consistently held. [74 N.J. at 50-51]
Plaintiff has admitted that it failed to perfect the security interest in this case, and we see little difference between the failure to perfect a security interest as to personal property, and the failure to record a real estate mortgage in the Langeveld case. As the court there noted:
... A failure to record a mortgage held as collateral security  absent waiver, estoppel or the like  seems clearly to be an instance of unjustifiable impairment. Common law authorities so held, almost without exception. [74 N.J. at 52]
The only question remaining is the time for valuing the collateral, since we here have a calculable loss. The absolute discharge of the surety which would normally result from the impairment of collateral does not necessarily follow. The rule adopted in Langeveld was that:
... If the impairment of collateral can be measured in monetary terms, then the calculated amount of the impairment will ordinarily measure the extent of the surety's discharge. But there are factual situations  this may or may not be one of them  where a surety may be able to establish that he has sustained prejudice, but be unable to measure the extent of the prejudice in terms of monetary loss. Where such a situation is presented the surety will normally be completely discharged. [74 N.J. at 56-57, footnote omitted.]
Generally an accommodation party would not be permitted to obtain the collateral until he paid the holder and thus became entitled to an assignment of the security. Here, however, defendant was not given the opportunity to pay the balance and have the collateral assigned, or to pay the amount he acknowledged was due, the difference between the fair market value of the collateral and the balance due on the loan. Plaintiff repeatedly asserted that defendant was entitled to neither a credit nor an assignment. It would be inequitable to have defendant credited with the value of the car as of the time this issue was resolved by this court and payment made. In our case, the earliest date upon which defendant would have been able to look to the collateral was when the demand was made upon *168 him. At that point, but for the negligent actions of plaintiff, defendant could have cut his losses by paying the balance due, and, as noted above, taken the collateral for sale under his right of subrogation. On remand, therefore, the Law Division shall determine the value of the automobile as of the date of plaintiff's initial demand against defendant.
We vacate both the default judgment and the default against defendant, and permit him to file his answer at this time. We remand the matter to the Law Division to determine the extent of defendant's liability after giving him credit for the fair market value of the collateral as of the date of plaintiff's initial demand upon defendant for payment of the balance due on the loan. We do not retain jurisdiction.