No. 85-591

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

_____

EL-CE STORMS TRUST, CECIL H. STORMS
and ELSIE S. STORMS,

        Plaintiffs and Respondents,

   -vs-

PAUL ALLEN SVETAHOR and ANN GAIL
SVETAHOR,

        Defendants and Appellants.

_____

APPEAL FROM:  District Court of the Nineteenth Judicial District,
               In and for the County of Lincoln,
               The Honorable Robert Holter, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Sverdrup & Spencer; Scott Spencer, Libby, Montana

    For Respondent:

        Hedman, Hileman & Lacosta; Donald E. Hedman, Whitefish,
        Montana

_____

                Submitted on Briefs: April 10, 1986

                    Decided:  August 28, 1986

Filed: AUG 28 1986

_____
                Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

This is an appeal from a judgment entered in the Nineteenth Judicial District, in and for the County of Lincoln. Cecil Storms, as trustee of El-Ce Storms Trust, brought suit on a contract and promissory note executed by Paul and Ann Svetahor in favor of El-Ce Storms Trust. Paul was unable to be served; however, Ann answered the complaint and set up the affirmative defense of discharge for failure to adequately protect the collateral. After a bench trial, the trial court entered judgment in favor of Storms for the full balance due on the note. Ann Svetahor has appealed from that judgment. We reverse in part and remand for findings consistent with this opinion.

During October 1982 respondent and Paul Svetahor began negotiations concerning a loan. Paul wanted to borrow $10,000 from respondent so that he could increase his stock in Shaklee Products. At that time, Paul was married to appellant, although at the time of trial the two were divorced. At no time during the negotiations for the loan did respondent have any discussion with appellant as to her role on the note or in her husband's business. At some point, respondent drafted the note and contract at issue here; however, he told Paul that he would not loan him the money without appellant's signature on the note. Appellant had no knowledge of the note until Paul brought it home for her to sign. Paul told her that respondent insisted she sign the note; otherwise, he would not loan Paul the money. Appellant signed the note along with her husband. Within sixty days of their signing, respondent paid $10,000 to Paul and appellant in three separate checks. They endorsed the checks, and the money was used to buy Shaklee products for Paul's business.

2

The agreement between respondent and the Svetahors granted the former a security interest in the Shaklee inventory used in Paul's business. However, respondent did not record the security agreement at that time. In January 1983, Paul obtained a loan from the First National Bank of Eureka. The bank took a security interest in the Shaklee products used in Paul's business and immediately filed a financing statement.

Only seven payments were made on the loan from respondent, and Paul also defaulted on the loan from First National Bank. Respondent took possession of the Shaklee inventory after the loan became delinquent. However, when the bank learned of this, it demanded that the inventory be delivered to it. Respondent complied, and the bank sold the inventory. Respondent subsequently brought suit on the note.

Three issues are presented for our consideration:

1. Whether the appeal is timely.

2. Whether appellant is discharged from liability on the note due to respondent's impairment of the collateral.

3. Whether the District Court erred in computing the amount due on the note.

Timeliness of the Appeal

Respondent contends that appellant did not perfect her appeal within the time restraints imposed by law. He bases this contention solely on the fact that judgment was entered on August 13, 1985, and notice of appeal was not filed until November 4, 1985. Rule 5 of the Montana Rules of Appellate Civil Procedure states the applicable time limit for filing notice of appeal:

3

> The time within which an appeal from a judgment or an order must be taken shall be 30 days from the entry thereof, except that in cases where service of notice of entry of judgment is required by Rule 77(d) of the Montana Rules of Civil Procedure the time shall be <u>30 days from the service of notice of entry of judgment</u> . . . [Emphasis added.]

This is a case where service of notice of entry of judgment is required by Rule 77(d) because appellant made an appearance in the action. Therefore, under Rule 5, M.R.App.Civ.P., the time within which the appeal must have been taken by appellant was thirty days from the "service" of notice of entry of judgment.

In determining what constitutes proper service under Rule 5 sufficient to start the thirty-day time limit running, reference must again be made to Rule 77(d), M.R.Civ.P. The prevailing party in an action has the duty of serving notice of entry of judgment, together with a copy of the judgment or a description of the nature and amount of relief and damages granted, upon all parties who have made an appearance. Since respondent was the prevailing party in this action, he had the burden of serving proper notice of the judgment on appellant. Nothing in the record indicates that respondent ever served any notice on appellant nor does respondent contend that he did so. It does appear that the District Court mailed a notice of entry of judgment to counsel for both parties; however, that notice was totally insufficient since it did not state what the judgment was nor provide a description of the nature of the relief granted. The thirty-day period for filing a notice of appeal does not begin to run until proper notice, as required by Rule 77(d), is served on the losing party who has made an appearance. Haywood v. Sedillo (1975), 167 Mont. 101, 535 P.2d 1014; Pierce Packing

Co. v. District Court, Etc. (1978), 177 Mont. 50, 579 P.2d 760. Since proper notice of entry of judgment was never served on appellant, the time for filing her notice of appeal never began to run. Consequently, this appeal was timely filed.

Impairment of the Collateral

Appellant contends that she is completely discharged from liability on the note because the respondent failed to perfect his security interest in the inventory causing an impairment of the collateral. Respondent answers by saying that appellant signed as a co-maker and, as such, she is primarily liable on the note without the benefit of any defenses. Under what circumstances, and to what extent, a party to a note is discharged from liability because the holder has impaired the collateral appears to be a case of first impression in this Court.

Under § 30-3-606, MCA, a "holder discharges any party to the instrument to the extent that without such party's consent the holder unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse." The first problem encountered under the statute is determining what is meant by "any party to the instrument." From a plain reading of the statute, it would appear that any person on the instrument could be discharged, which would include makers, endorsers, guarantors--in short, any person who appears on the instrument. Under this interpretation, appellant would be entitled to the defense offered by the statute since she is clearly a party to the instrument. However, statutes cannot be interpreted in a vacuum. "The goal of statutory

5

interpretations is to give effect to the purpose of the statute. [Citation omitted.] To give effect to the purpose of the statute as intended by the legislature, the context in which the words are used is more important than precise grammatical rules or a dictionary definition." Burritt v. City of Butte (1973), 161 Mont. 530, 535, 508 P.2d 563, 566.

Montana adopted § 3-606 of the Uniform Commercial Code verbatim; therefore, the official code comment and the law applied in other jurisdictions is helpful in determining what is meant by the words "any party." Official Comment 1 provides that the purpose of the section is to make it clear:

> The words "any party to the instrument" remove an uncertainty arising under the original section. The suretyship defenses here provided are not limited to parties who are "secondarily liable," but are available to <u>any party who is in the position of a surety, having a right of recourse either on the instrument or dehors it, including an accommodation maker or acceptor known to the holder to be so.</u> [Emphasis added.]

Thus, the drafters of the Code appear to limit the defense of discharge solely to those "parties" who occupy the position of a surety. Under this view, accommodation makers, endorsers, and guarantors would be included, but makers and co-makers would not.

There is some disagreement among the states over whether § 3-606 should apply to all parties to an instrument or whether it should extend only to accommodation parties and others who occupy the position of sureties. Some jurisdictions hold that ordinary makers and co-makers are discharged along with parties in the position of sureties. See e.g. Crimmins v. Lowry (Tex. 1985), 691 S.W.2d 582; Southwest Florida Production v. Schirow (Fla. 1980), 388 So.2d 338; Rushton v. U.M.&M. Credit Corporation (Ark. 1968), 434 S.W.2d

6

81.  However, the majority of jurisdictions take the view that only parties who occupy the position of sureties are entitled to discharge.  See e.g. Wohlhuter v. St. Charles Lumber & Fuel Co. (Ill. 1975), 338 N.E.2d 179; Peoples Bank, Etc. v. Pied Piper Retreat, Inc. (W.Va. 1974), 209 S.E.2d 573; Smiley v. Wheeler (Okla. 1979), 602 P.2d 209; Bank of New Jersey v. Pulini (N.J. 1984), 476 A.2d 797; United States v. Unum, Inc. (5th Cir. 1981), 658 F.2d 300.

We find that the majority rule is the better approach. The comments to § 30-3-606 make it clear that the statute discharges "any party who is in the position of a surety, having a right of recourse. . ."  Makers and co-makers are not sureties and do not have a right of recourse on the instrument.  A maker is primarily liable on the instrument and cannot look to anyone else for payment.  Similarly, co-makers are primarily liable on an instrument.  As between co-makers, each is ultimately liable for the obligation. Although one co-maker may have a right of contribution from the other co-maker if the former pays more than his share, he does not have a right of recourse for the entire payment made.  However, a party who occupies the position of a surety does have a right of recourse on the instrument for the full amount owing if he is made to pay.

The Restatement of Security defines suretyship as "the relation which exists where one person has undertaken an obligation and another person is also under an obligation or other duty to the obligee, who is entitled to but one performance, and as between the two who are bound, one rather than the other should perform."  (Emphasis added.)  Restatement of Security, § 82.  Thus, as between a maker and a party who signs for accommodation, the maker is ultimately liable on

7

the note and is the one who is expected to pay. If the surety or accommodation party pays the instrument, he is subrogated to the rights of the creditor and has full right of recourse against the maker. Section 30-3-415, MCA. This principle applies equally well whether the party signs as an accommodation maker, an accommodation endorser or a surety. See Comment 1 to § 30-3-415. Therefore, we hold that § 30-3-606 applies to all parties who occupy the position of a surety, including accommodation makers, endorsers and acceptors, but it does not apply to principles and co-makers.

Having decided that accommodation makers are entitled to the defense of discharge under § 30-3-606, we must now determine whether appellant signed as a co-maker or an accommodation maker. The District Court found as a fact that appellant "signed the Promissory Note. There is no language in the Note or Contract limiting her signatory capacity. Plaintiff had no notice that she claimed to be anything other than a maker." The court then concluded that appellant was liable for the full amount due on the note. In its findings and conclusions, it appears that the court failed to fully analyze the individual rights and obligations of the parties to the note in question in light of the statutory definition of an accommodation party.

Section 30-3-415, MCA, provides:

> (1) An accommodation party is one who signs the instrument <u>in any capacity for the purpose of lending his name to another party to it.</u>
>
> (2) When the instrument has been taken for value before it is due the accommodation party is liable in the capacity in which he has signed even though the taker knows of the accommodation.
>
> (3) As against a holder in due course and <u>without notice of the accommodation</u>

8

> oral proof of the accommodation is not
> admissible to give the accommodation
> party the benefit of discharges depen-
> dent on his character as such. _In other
> cases the accommodation character may be
> shown by oral proof._ [Emphasis added.]

Thus, it is obvious that a person can sign an instrument as a co-maker for the purpose of lending his name to the other maker and still be considered an accommodation party. Although the accommodation maker will be liable on the instrument as a maker, he will be entitled to the defenses of a surety--in this case, discharge under § 30-3-606.

The instrument at issue shows that appellant signed as a co-maker. The note states that "the undersigned promise to pay," and appellant's signature appears under her husband's at the lower right-hand corner of the note without any limitation on her liability thereon. However, this fact is not the sole consideration in determining whether appellant is an accommodation party. Several factors are important in this determination; namely, her purpose in signing the instrument, the intent of the parties to the instrument, whether she took part in any negotiations leading up to the loan, whether she received any benefit from the transaction, and whether her signature was necessary in enabling the other party to get the loan. See Lyons v. Citizens Commercial Bank (Fla. 1983), 443 So.2d 229. We find, on the basis of these factors and in light of the undisputed evidence, that appellant was an accommodation maker on the instrument and that respondent had notice of her status as such.

One of the most important indications that appellant signed as an accommodation to her husband is the fact that she signed solely for the purpose of enabling her husband to get the loan. In respondent's own testimony, he stated that

9

he would not make the loan without appellant's signature. Likewise, Paul Svetahor told appellant before she signed the note that Storms insisted that she sign. This fact alone indicates that respondent had knowledge that appellant signed the note as an accommodation to her husband. Furthermore, appellant took no part in the negotiations between respondent and Paul leading up to the loan. Additionally, appellant did not receive any direct benefit from the loan to her husband. She testified, without contradiction, that the entire proceeds of the loan went to buy inventory for Paul's business. Respondent had knowledge of this fact since the contract itself provided that the proceeds of the loan would go to buy inventory. Appellant did not take any part in Paul's business; she did not even have a key to his office. Thus, it appears that appellant signed the note solely to enable her husband to get the loan, and she did not receive any direct benefit from it.

Cases in other jurisdictions considering a similar situation have found the wife to be an accommodation party on less evidence than was presented in this case. In Fithian v. Jamar (Md. 1979), 410 A.2d 569, two partners sought a loan from a bank in order to enable them to purchase some new equipment for their business. The bank agreed to loan the men the money only if each man's wife would co-sign the note. The note was signed on its face at the bottom right-hand corner by the two men and their wives. Since the court found that the wives' signatures were required before the bank would make the loan, it held that the wives signed as accommodation makers.

In Godfrey State Bank v. Mundy (Ill. 1980), 412 N.E.2d 1131, the wife executed a note along with her husband signing

10

in the lower right-hand corner without any limitation on her capacity as a maker. She took no part in the negotiations prior to execution of the note nor did she derive any direct benefit from the proceeds of the loan. On a finding that the wife signed the note only to lend her name to her husband, the court held that she was an accommodation maker. A similar result was also reached in Savings Bank of Manchester v. Kane (Conn. 1978), 396 A.2d 952, and Seaboard Finance Co. of Connecticut, Inc. v. Dorman (Conn. 1966), 227 A.2d 441.

Although there may have been no express understanding between appellant and her husband as to which one would be ultimately liable on the note, such an understanding is implied in the circumstances of the transaction. This implication is found primarily in the fact that appellant signed the note solely to lend her name to her husband to enable him to obtain the loan, appellant received no direct benefit from the loan, and appellant took no part in the negotiations prior to the loan. "[T]he failure of a party to receive a benefit is strong evidence of the party's accommodation status. . . . [W]here B comakes a note with A to obtain a loan to be used solely by A, B will be presumed to be an accommodation party especially if the loan was negotiated by A with C, the lender, who requested that A obtain a co-maker." Hawkland and Lawrence UCC Series, § 3-415:03 (Art. 3). We hold that appellant was an accommodation party, and the District Court erred in finding her to be otherwise.

Having found that appellant is an accommodation party who is entitled to the benefit of the defense provided by § 30-3-606, we now decide whether respondent's failure to perfect his security interest in the inventory constituted an unjustifiable impairment of collateral. It is undisputed

11

that respondent could have filed a financing statement perfecting his security interest in the collateral at least as early as November 3, 1982. However, respondent did not perfect his security interest in the inventory at that time. Instead, he waited until after the First National Bank of Eureka perfected its security interest in the same inventory. Had respondent perfected his security interest prior to the date that the bank did so, respondent would have had priority over the bank in the collateral, and it would have been available to him to apply to the debt. See §§ 30-9-302, 30-9-312, MCA. Had appellant paid the debt immediately upon demand by respondent, she would have been subrogated to respondent's rights against Paul Svetahor, and she would have been entitled to apply the collateral to the debt. But, because respondent failed to take the necessary steps to secure his priority in the collateral which resulted in its loss to another creditor, the collateral was unavailable to appellant. Thus, the collateral was unjustifiably impaired.

The great majority of courts in other jurisdictions considering the issue have held that the failure to perfect a security interest is an unjustifiable impairment of collateral. In Farmers State Bank of Oakley v. Cooper (Kan. 1980), 608 P.2d 929, the holder of a note secured by a security agreement in office equipment brought suit against the accommodation maker for payment on the note. The security agreement was never perfected, and the collateral was lost. The court held that the "failure of the holder of a security agreement to perfect it, which failure results in a loss of available collateral to an accommodation party, is an impairment of the collateral." Farmers State Bank of Oakley, 608 P.2d at 936. In Huey v. Port Gibson Bank (Miss. 1980), 390

So.2d 1005, the bank filed suit on two promissory notes endorsed by Huey. As collateral, a security agreement was imposed on all inventory, furniture, and appliances owned by the maker. However, the bank failed to properly file a financing statement evidencing its interest which allowed the trustee in bankruptcy to gain priority. The court held that "the bank's failure to file the financing statement with the Secretary of State, thereby permitting other creditors to gain priority, was an unjustifiable impairment." Huey, 390 So.2d at 1009. Similarly, in Bank of New Jersey v. Pulini (N.J. 1984), 476 A.2d 797, 799, the court held:

> Since defendant [i.e., the accommodation maker] had the right to have this collateral assigned to him if he paid off the loan balance, the bank's failure to perfect its security interest impaired the value of that collateral to defendant.

Anderson, in his treatise on the Uniform Commercial Code, supports the majority view. In considering what constitutes an impairment of collateral, he states:

> The failure to perfect a security interest under Article 9 is an "impairing" of collateral within the discharge provision of Article 3. Consequently, where a creditor is given a chattel mortgage on an automobile to secure payment of a note, the chattel mortgage constitutes "collateral" and if the creditor fails to file the mortgage with the result that it has no effect as against a subsequent purchaser of the automobile, there is a failure to preserve collateral within the meaning of Code § 9-207, and an accommodation maker on the note is discharged under Code § 3-606.

Anderson, Uniform Commercial Code, § 3-606:8. See also, Beneficial Finance Co. of Norman v. Marshall (Okla. 1976), 551 P.2d 315; Shaffer v. Davidson (Wyo. 1968), 445 P.2d 13.

We hold that respondent's failure to perfect his security interest in the inventory which resulted in its loss to

another secured party constituted an unjustifiable impairment of the collateral and entitled appellant to a discharge. However, appellant is discharged only to the extent of the impairment. Since the entire collateral was lost, she is entitled to a discharge to the extent of the value of the collateral. The earliest date that appellant would have been allowed to look to the collateral was the date demand was made on her by the respondent. At that point, appellant could have paid the entire debt due and then taken the collateral for sale under her right of subrogation, if it had been available. Therefore, on remand, the District Court shall determine the value of the collateral as of the date of respondent's initial demand against appellant. Since appellant is still liable as a maker on the note, she is still obligated to pay the amount of the judgment less the value of the collateral.

## Computation of the Amount Due on the Note

Appellant contends that the District Court erred in computing the amount due on the note. Her contention on this point is without merit. The computation was made within the general terms of the note and contract.

Reversed in part and remanded.

Chief Justice

14

We concur:

_____
_____
_____
_____
Justices