Submitted on record and briefs February 5, affirmed November 23, 1988, decision
withdrawn January 4 and reissued by order April 13, reconsideration allowed
by opinion May 10, 1989
See 96 Or App 416 (1989)

## FARM CREDIT BANK OF SPOKANE,
*Respondent,*

*v.*

## MIRA MONTE FARM, INC., et al,
*Appellants.*

(84-11-289; CA A42516)

764 P2d 935

Gerald R. Pullen, Portland, filed the brief *pro se,* for
appellant Pullen.

Phillip R. Muir, Portland, filed the briefs for appellants Mira Monte Farm, Inc., Albert H. and Virginia L. Troutman, Mira Monte Farm Enterprises, and Theodore A. and Timothy A. Troutman.

G. Kenneth Shiroishi, Portland, filed the brief for respondent.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Plaintiff brought this action to foreclose a mortgage given to secure a promissory note executed by defendants Mira Monte Farms, Inc. (Mira Monte), Albert H. and Virginia L. Troutman (Troutman), and Hal F. Broughton (Broughton). The other defendants, including Gerald R. Pullen (Pullen), are those who may have or claim an interest in the real property. Pullen asserts an interest in the property superior to that of plaintiffs, under various theories arising out of unpaid attorney fees owed by Mira Monte and Troutman. Mira Monte and Troutman contend that they were accommodation makers on the note and that, when plaintiff released Broughton from any deficiency judgment that might be taken, plaintiff, as a matter of law, released them. The trial court rejected the claims of all of those defendants and entered judgment for plaintiff. We affirm.

In order to understand the problems presented, it is necessary to relate the background that led to the present litigation. The Troutmans are the controlling shareholders of Mira Monte, which owned certain farm lands. In 1978, Mira Monte sold an undivided interest in the farm to Broughton under a land sale contract, subject to existing mortgages held by creditors not involved here. Those creditors foreclosed in 1978, resulting in a sheriff's sale in September, 1980, at which the farm was purchased by Baker Production Credit Association (BPCA). In that foreclosure proceeding, Mira Monte sought strict foreclosure of the land sale contract between it and Broughton. A stipulated interlocutory decree was entered strictly foreclosing Broughton's interest if a specific amount was not paid within the time set forth in the interlocutory decree.

In an effort to salvage what they could, Troutman, Mira Monte and Broughton entered into an agreement on April 17, 1981, that would permit those parties to redeem the farm from BPCA before the redemption period had expired. In that agreement, Mira Monte and Broughton agreed to take out a loan from plaintiff in an amount that would permit them to redeem the farm and that Broughton would be responsible for making all of the payments on that loan. That agreement recited that the amount of money Broughton was required to pay under the interlocutory decree of strict foreclosure was

$1,142,119, plus interest from March 4, 1981, until paid, and that if the money was paid, Broughton was entitled to receive an undivided one-half interest in the farm (reduced from a two-thirds interest which, apparently, he had had a right to receive before the April, 1981, agreement). Broughton was required to pay a total of $75,000 on or before April 30, 1981, to apply to the amounts owing under the interlocutory decree.

By the terms of the agreement, the time for Broughton to redeem the farm under the interlocutory decree was extended. Mira Monte and Broughton agreed to apply immediately for the maximum loan available from the Federal Land Bank to be secured by a mortgage on the farm. The loan proceeds were to be paid to Troutman and Mira Monte and were to be credited against the amounts owing them from Broughton under the interlocutory decree. Troutman and Mira Monte agreed to pay the sums over to BPCA to redeem the farm. The agreement expressly "cancelled" "all options" by Broughton to repurchase the farm other than as set forth in that agreement.

In July, 1981, plaintiff loaned Mira Monte, Troutman and Broughton $980,000, secured by a mortgage on the farm. Each of those parties signed the note as maker and also signed the mortgage as mortgagors. With those funds, the farm was redeemed. However, Broughton apparently failed to make the loan payments, as a result of which Troutman and Mira Monte went back to court in the still pending strict foreclosure proceeding and obtained a final decree of strict foreclosure, by the terms of which Broughton was foreclosed of all interest in the farm.

Thereafter, plaintiff commenced this foreclosure proceeding, whereupon Broughton filed for protection under the bankruptcy laws and plaintiff moved for relief from the automatic stay provisions of 11 USC § 362. The bankruptcy court entered a stipulated order allowing plaintiff to proceed with this foreclosure on the condition that plaintiff could not obtain a deficiency judgment against Broughton.

Troutman and Mira Monte contend that, by virtue of that stipulation, plaintiff, as a matter of law, discharged them from personal liability on the note, relying on ORS 73.6060(1)(a), which provides, in relevant part:

"(1) The holder discharges any party to the instrument to the extent that without such party's consent the holder:

"(a) Without express reservation of rights releases or agrees not to sue *any person against whom the party has to the knowledge of the holder a right of recourse* or agrees to suspend the right to enforce against such person the instrument or collateral or otherwise discharges such person * * *." (Emphasis supplied.)

There is no question that plaintiff had "knowledge" of the agreement among the makers of the note that Broughton was responsible for making the note payments. Although the statute applies to accommodation makers, *The Oregon Bank v. Baardson,* 256 Or 454, 473 P2d 1015 (1970), it is not clear whether Troutman and Mira Monte, under all of the facts of this case, fall into that category.[1] Given our view of the record on *de novo* review, we find it unnecessary to decide that question.

In our view, Troutman and Mira Monte did not have a right of recourse against Broughton at the time plaintiff stipulated with the trustee in bankruptcy not to seek a deficiency judgment against Broughton. Those defendants had exhausted their remedy against Broughton when they proceeded in the contract foreclosure proceeding to obtain a final decree of strict foreclosure. The agreement of April 17, 1981, sets forth the obligations of Broughton in lieu of those required by the land sale contract and the interlocutory decree of strict foreclosure that had been entered before the parties agreed to borrow money from plaintiff. As we interpret that document, if Broughton did the things and paid the sums required by that agreement, he was entitled to an undivided one-half interest in the farm just as he would have been if he had complied with the terms of the interlocutory decree, as modified by a "Novation of Contracts" dated October 11,

---

[1] It is not entirely clear from *The Oregon Bank v. Baardson, supra,* whether it is necessary for one to be an accommodation party or in the nature of a surety in order to be protected by the statute. Some courts have held that co-makers are discharged. *Rushton v. U.M. & M. Credit Corporation,* 434 SW2d 81 (Ark 1968); *Crimmins v. Lowry,* 691 SW2d 582 (Tex 1985); *Southwest Florida Production v. Schirow,* 388 So 2d 338 (Fla App 1980). Other courts have held that only accommodation parties, but not co-makers, are protected. *Lyons v. Citizens Commercial Bank,* 443 So 2d 229 (Fla App 1983); *Wolhuter v. St. Charles Lumber & Fuel Co.,* 338 NE2d 179 (Ill 1975); *El-Ce Storms Trust v. Svetahor,* 724 P2d 704 (Mont 1986).

1979.[2] If he did not, Troutman and Mira Monte could apply to the court in which the strict foreclosure proceeding was pending for a final decree strictly foreclosing Broughton of all of his interest in the farm. If there had been no agreement following the entry of the interlocutory decree, and if Broughton failed to pay the sums required, Troutman and Mira Monte could have cut off all of Broughton's interest but would not have been entitled to a money judgment against Broughton.

By virtue of the April 17, 1981, agreement, the parties were able to redeem the farm and, in effect, reinstate their respective interests in it, including their rights under the interlocutory decree, as modified. When Broughton defaulted in the loan payments to plaintiff, Troutman and Mira Monte then cut off all of Broughton's interest by the final decree and now, in effect, claim a right to a money judgment against Broughton, to which they were not entitled in the strict foreclosure action. Because Mira Monte and Troutman sought and obtained a final decree of strict foreclosure, they exhausted their remedy against Broughton and no longer have any right of recourse. Accordingly, we hold that Troutman and Mira Monte were not discharged from personal liability on the note by virtue of ORS 73.6060(1)(a).

■ We now consider Pullen's appeal. The trial court granted plaintiff's cross-motion for summary judgment against him, so we take the facts in the light most favorable to him. Mira Monte owed Pullen $20,000 for legal services; in 1978, Troutman, on behalf of Mira Monte, orally agreed to give Pullen a lien on the farm to secure that obligation, and he recorded that "lien" in July, 1978. Pullen claims an "equitable lien" superior to plaintiff's mortgage. He also claims that, because plaintiff's loan agreement with Troutman, Mira Monte and Broughton required that they use those funds to pay off all liens and encumbrances, the failure of Mira Monte to pay Pullen constituted a breach of contract by plaintiff of a provision that was for his benefit.

■ His contention that Troutman's oral promise to secure the debt constituted an equitable lien fails, because an equitable lien on land must be in writing. *Roche v. Gueber,* 22

---

[2] That document is not in the record.

Or App 167, 171, 537 P2d 1177 (1975). No lien existed, therefore, and, because the contract claims are based on plaintiff's alleged duty to extinguish all liens,[3] those theories also fail.

Affirmed.

---

[3] The contract claims fail, furthermore, because any duty owed to Pullen was by Troutman, not plaintiff.