**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0436-22

NITISH B. JOY,

    Plaintiff-Respondent,

v.

JUJU B. JOY,

    Defendant-Appellant.

_____

Submitted January 9, 2025 – Decided January 30, 2025

Before Judges Walcott-Henderson and Vinci.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FM-12-2272-21.

Susheela Verma, attorney for appellant.

The Law Offices of Andrew J. Economos, LLC, attorney for respondent (Andrew J. Economos, of counsel and on the brief).

PER CURIAM

Defendant Juju B. Joy appeals from the August 26, 2022 order denying her motion for reconsideration of the June 24, 2022 order denying her motion to vacate final judgment of divorce (FJOD) by default, June 24 order denying her motion to vacate, April 28, 2022 FJOD by default, and March 10, 2023 order awarding plaintiff Nitish B. Joy amounts allegedly owed by defendant post-divorce. Following our review of the record and the applicable legal principles, we reverse and vacate the FJOD and the March 10, 2023 order.

I.

The parties were married on November 29, 1997. They have three children together, two of whom were minors at the time of the divorce. On June 9, 2021, plaintiff filed a complaint for divorce. On August 1, 2021, defendant was personally served with the complaint. She did not file an answer. On or around September 28, defendant traveled to India to care for her elderly father, who was "seriously ill," "alone[,] and [did] not have anyone else to take care of him."

On October 8, 2021, while defendant was still abroad, plaintiff filed a request to enter default. Defendant returned to the United States with her father on November 24. On April 5, 2022, plaintiff filed a notice of proposed FJOD. The notice provided, "a [f]inal [j]udgment [h]earing date is scheduled for April

2

28, 2022[,] . . . at which time [p]laintiff shall seek a . . . judgment . . . consistent with this [n]otice of [p]roposed" judgment. On April 7, defendant was personally served with the notice. On April 27, defendant requested an adjournment because she "need[ed] time to secure an attorney." The court denied defendant's adjournment request.

On April 28, the court held a hearing on plaintiff's application for final judgment. Defendant appeared without counsel. The court instructed defendant, "since you[ are] in default, you[ are] not permitted to provide any evidence[,] but you will be permitted to ask questions of . . . plaintiff regarding his testimony."

Plaintiff testified regarding his proposed imputation of income to defendant, the value of her dental practice, his desire to sell the marital home, and his proposed division of other marital assets. He was familiar with defendant's "earnings . . . in the past several years" based on the parties' tax returns and because he "used to do [defendant's] books." Plaintiff testified that in 2021, defendant's income was $84,000, but she was only working twenty to twenty-five hours per week. In 2020, her income was "about [$]60,000," but "the Covid year was bad." "[P]rior to that, she used to make [$]150[,000],

$170,000."[1]  Plaintiff was not aware of "anything that prevents [defendant] from working full time."

According to plaintiff, it was his "understanding" an experienced dentist working full time in Middlesex County "has an average income of $195,474 . . . [b]ased on looking at . . . numbers on Google and stuff."  Plaintiff relied on a "printout from the [i]nternet that would evidence that a dentist in the State of New Jersey makes anywhere from [$]147,000 to [$]253,000 with the average being [$]195,474."  He did not identify where on the internet he found the "printout" and the source is not evident from the document itself.  Because defendant was an "experienced dentist," plaintiff requested the court find imputed income in the amount of $190,000, which was equal to his own income at the time.

Plaintiff proposed a monthly child support obligation of $1,070.33 based on imputed income of $190,000.  The imputation of income also formed the basis of his request that he and defendant equally split:  (1) the proceeds of the marital residence; (2) the costs of college for their children; (3) additional

---

[1]  Plaintiff contends documents submitted in connection with his application for final judgment show defendant earned approximately $156,000 in 2018 and $148,000 in 2019.  He did not provide any evidence defendant ever earned $170,000 as he testified.

extracurricular expenses for their children outside of what was covered by plaintiff's child support obligation; and (4) the cost of purchasing a vehicle for their youngest child. Plaintiff did not request alimony and believed if defendant "chose to work full time[,] . . . she could easily sustain her lifestyle." Plaintiff sought permission to sell the marital residence and split the net proceeds equally with defendant.

As to the parties' other marital assets, plaintiff proposed defendant retain "some gold jewelry and some gold items" in the home which he estimated to be worth "maybe $10,000." Plaintiff also proposed he relinquish his five percent ownership interest in defendant's dental practice. He testified defendant purchased the practice several years earlier for $150,000, and he estimated the practice was worth $220,000 at the time of the hearing "given [his] knowledge of the business." He did not offer any other support for that valuation.

The most significant marital asset was a 401(k)-retirement account held in plaintiff's name which, at the time of the hearing, was valued at $278,133. In exchange for waiving his five percent interest in defendant's dental practice, agreeing to pay for the minor children's car and health insurance, and allowing defendant to keep the gold, plaintiff proposed he be awarded seventy-five percent of the 401(k) account.

A-0436-22

At the conclusion of plaintiff's presentation, the court engaged in the following colloquy with defendant:

> THE COURT: [Defendant,] do you have any questions . . . ?
>
> [DEFENDANT]: Yes, I have [an] explanation for my default.
>
> THE COURT: Well, there[ is] no explanation. Default is you did[ not] answer and so therefore you do[ not] have an opportunity to talk about that. Do you have any questions to ask him regarding his testimony?
>
> [DEFENDANT]: So I feel myself, I do[ not] have an attorney and I applied for a government through the –
>
> THE COURT: Yes, and that was denied.
>
> [DEFENDANT]: What[ is] that?
>
> THE COURT: Your adjournment request was denied.
>
> [DEFENDANT]: Denied?
>
> THE COURT: Yes.
>
> [DEFENDANT]: Okay. But I need to hire an attorney to, because I do[ not] agree [with] anything that was said.
>
> THE COURT: Okay. What questions do you have of [plaintiff] regarding his testimony?
>
> [DEFENDANT]: Questions regarding –
>
> THE COURT: As I explained to you before we started,

6

A-0436-22

you do[ not] have an opportunity to testify[,] but you do have an opportunity to ask him questions regarding his testimony. So do you have any questions regarding his testimony?

[DEFENDANT]: I think I have the opportunity when I have a lawyer to [do] that.

THE COURT: You[ are] not getting a lawyer but your request for an adjournment was denied. Do you have any questions to ask of him regarding his testimony, last time? Do you have any questions?

[DEFENDANT]: I[ am] still trying to do the mediation (inaudible) so I was not prepare[d] for the final judgment today.

THE COURT: Okay. But the final judgment is going to happen today. Last time, do you have any questions to ask of him regarding his testimony?

[DEFENDANT]: I will have my lawyer talk about that.

The court found plaintiff's testimony "certainly . . . made sense" and he was "a credible witness." It imputed income of $190,000 to defendant based on plaintiff's testimony and entered FJOD awarding plaintiff all the monetary relief sought in his proposed form of final judgment.

Defendant subsequently retained counsel and on May 17, 2022, filed a motion to vacate the FJOD. In her accompanying certification, defendant asserted she was in India caring for her elderly father who was seriously ill from September 28, until November 24, 2021, when she returned to the United States

with her father to continue caring for him here.

Although they lived in the same home, plaintiff did not tell her anything about the divorce proceedings, and she did not receive the notice of default served in October 2021, because she was in India. After she returned to the United States, her father contracted Covid-19. "[D]ue to his age and poor health, addressing his medical and health issues [was] a full[-]time job for [her]." "In all this chaos and crisis, [she] had forgotten about the divorce and believed that [they would] be able to reconcile the same way [they] were able to do so in the past." She contended, "[t]here is undeniable evidence that [she] was out of the country and [p]laintiff occupied the home where [she] was supposed to receive notice" and "his lawyer did not even make an effort to email [her] relevant communications."

She also asserted plaintiff "misled the court significantly about [her] earning capacity being equal to [his]." She contended "[h]istorically, on average, income from [her] dental practice has been between $50,000 to $55,000." She disputed plaintiff's claim that she chose to work part time. She asserted, "[c]ontrary to a full[-]time job, a business occurs only when a customer walks into the doors. [She has] not turned away any customers." In addition, her "capacity to practice [dentistry] is significantly diminished due to issues with

[her] hands" and "serious issues in [her] legs."

Defendant contended plaintiff should not have been allowed to estimate the value of her dental practice because he is not an expert and failed to account for the historical earnings and condition of the business. Specifically, she contended "[t]he business has historically generated a little over $50,000 per year. The premises are leased and therefore[,] there is no value in it. The equipment is old and outdated."

On June 24, 2022, without hearing oral argument, the court entered an order denying the motion supported by an oral opinion. The court found:

> Defendant here asks to set aside the default judgment on the grounds that she was unable to meaningfully participate in the divorce litigation due to her father's illness and that . . . plaintiff was aware and took advantage of the situation. Really, the only section of court [Rule] 4:50-1 that that then would fall under might be [s]ection [(c)].
>
> [Section (a)] does[ not] apply. There was no mistake, inadvertence, surprise, or excusable neglect here. . . . So [section (c)] is the exception under the fraud, misrepresentation[,] or other misconduct of an adverse party.
>
> Here[,] there[ is] an assertion by . . . defendant that she was caring for her father in India and therefore should be essentially excused from participating in any legal proceedings thereafter. That[ is] simply not the way that . . . our litigation, matrimonial litigation works.

A-0436-22

She was properly served with a complaint for divorce. This is not the first time she[ has] been served with a complaint for divorce. Plaintiff had filed [a complaint] in the past that had been dismissed. . . .

And even if she was spending a substantial amount of time in India[,] . . . she certainly had plenty of time to retain the services of an attorney prior to going to India or coming back from India. The fact that she is assisting her father in India does not fall upon . . . plaintiff to have any determination by the [c]ourt that he committed somehow fraud, nor was there any misrepresentations made. He certainly advised her he was seeking a divorce.

I find no misconduct done by . . . plaintiff or plaintiff's counsel in actively pursuing it. Moreover, a timely notice of proposed final judgment was served on . . . defendant. She decided to show up in court. She decided not to hire or retain the services of an attorney prior to that.

. . . .

Finally, with regard to the catchall, [Rule 4:50-1(f),] [the court] find[s] that there are no other reasons justifying relief. This is, there are times when actions or inactions have consequences. . . . [D]efendant was aware of . . . plaintiff's objective to obtain a divorce from her as far back as August of 2021[,] and she chose not to do anything. Those actions have consequences. And the [c]ourt had listened to the testimony and entered a [FJOD] based upon the testimony and the reasons that have been placed on the record at the time of the entry of the divorce.

Defendant moved for reconsideration. On August 26, 2022, the court heard oral argument. Defendant argued the court should find excusable neglect because she was distracted by the need to care for her elderly father in India and then at home after she returned during the pendency of the lawsuit. She argued the court improperly found imputed income "without having any expert or any other evidence . . . except" plaintiff's testimony that he was "familiar with bookkeeping of the business and [his] say so. $190,000 income to be imputed to her." Defendant also argued the court erred by "accept[ing] the valuation of the business without having any expert testimon[y]" and "decided . . . child[] support and everything else based upon" plaintiff's testimony which was not "reliable evidence."

After hearing oral argument, the court entered an order denying the motion supported by an oral opinion. The court found "defendant is an intelligent individual and decided to do nothing about what was happening" and "[t]he fact that . . . defendant chose not to do anything does not give . . . defendant the right to later set aside something when there was inaction on her part throughout." The court found "there are consequences for inaction and that[ is] the entry of the [FJOD]."

11

On October 10, 2022, defendant filed a timely notice of appeal from the August 26, 2022 order denying reconsideration. On November 2, 2022, she filed an amended notice of appeal from the June 24, 2022 order denying her motion to vacate default judgment and April 28, 2022 FJOD.

While this appeal was pending, plaintiff filed an order to show cause to compel defendant to cooperate with the sale of the marital residence and pay certain amounts she allegedly owed from the proceeds of the sale. On March 10, 2023, the court entered an order granting the relief sought, including that plaintiff be paid $23,767.89 directly from the proceeds from the sale "as reimbursement to [p]laintiff for obligations which were [d]efendant's since the date of the divorce." On March 13, the marital residence was sold, and the proceeds were distributed in accordance with the FJOD and the March 10 order. On May 5, defendant appealed from the March 10 order in an amended notice of appeal.

On appeal, defendant argues the court erred by: (1) refusing to find defendant established excusable neglect and a meritorious defense pursuant to Rule 4:50-1(a); (2) accepting plaintiff's unreliable and incompetent testimony regarding the value of the dental practice and defendant's imputed income, both of which required expert testimony; (3) failing to apply and analyze the statutory

factors applicable to equitable distribution, spousal support, and child support; and (4) awarding plaintiff additional funds from the sale of the martial residence "without proper basis and without considering the expense [d]efendant incurred."

## II.

Defendant's only viable appeal is from the August 26, 2022 order denying reconsideration. Defendant's direct appeal from the April 28, 2022 final judgment by default is improper. See Haber v. Haber, 253 N.J. Super. 413, 416 (App. Div. 1992) ("The rule in New Jersey is that a direct appeal will not lie from a judgment by default."); N.J. Div. of Youth & Fam. Servs. v. T.R., 331 N.J. Super. 360, 363 (App. Div. 2000) (citing Haber and concluding direct appeal from a default judgment is improper).

Defendant's appeal from the June 24, 2022 order denying her motion to vacate default judgment was untimely. Defendant filed her amended notice of appeal on November 2, 2022, after the forty-five-day period to appeal had expired. Her May 5, 2023 notice of appeal from the March 10, 2023 order was also untimely. However, as discussed later in this opinion, we must vacate the March 10 order because the relief granted was dependent on the FJOD.

III.

We review a decision on a motion for rehearing or reconsideration of a final judgment or order pursuant to Rule 4:49-2 for an abuse of discretion. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021); Kornbleuth v. Westover, 241 N.J. 289, 301 (2020). Such motions are "within the sound discretion of the [c]ourt, to be exercised in the interest of justice." Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)). An abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigr. & Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)).

Reconsideration should be granted in those cases that "fall into that narrow corridor in which either [(]1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or [(]2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." D'Atria, 242 N.J. Super. at 401. Of course, under the circumstances, determining whether the court misapplied its discretion by denying the motion for reconsideration necessarily requires we review the merits

14

of the underlying motion to vacate default judgment. See <u>W.H. Indus., Inc. v.</u> <u>Fundicao Balancins, Ltda</u>, 397 N.J. Super. 455, 458-59 (App. Div. 2008).

<u>Rule</u> 4:50-1 provides six grounds for vacating a final judgment.[2] Generally, courts should grant relief under <u>Rule</u> 4:50-1 "'sparingly [and only] in exceptional situations.'" <u>Badalamenti v. Simpkiss</u>, 422 N.J. Super. 86, 103 (App. Div. 2011) (alteration in original) (quoting <u>Hous. Auth. of Morristown v. Little</u>, 135 N.J. 274, 289 (1994)). The court is obligated to review a motion to vacate a default judgment "'with great liberality,' and should tolerate 'every reasonable ground for indulgence . . . to the end that a just result is reached.'" <u>First Morris Bank &</u> <u>Tr. v. Roland Offset Serv. Inc.</u>, 357 N.J. Super. 68, 71 (App. Div. 2003) (alteration in original) (quoting <u>Mancini v. EDS ex rel. N.J. Auto. Full Ins.</u> <u>Underwriting Ass'n</u>, 132 N.J. 330, 334 (1993)). "All doubts . . . should be resolved in favor of the parties seeking relief." <u>Mancini</u>, 132 N.J. at 334 (citing <u>Arrow Mfg. Co. v. Levinson</u>, 231 N.J. Super. 527, 534 (App. Div. 1989)).

---

[2] To establish a <u>Rule</u> 4:50-1 claim, a litigant must allege at least one of these six grounds for vacating a final judgment: "(a) mistake, inadvertence, surprise, or excusable neglect; (b) newly discovered evidence[;] . . . . (c) fraud[,] . . . . misrepresentation, or other misconduct of an adverse party; (d) the judgment or order is void; (e) the judgment or order has been satisfied, released or discharged . . . .; or (f) any other reason justifying relief . . . ."

Although the court determined Rule 4:50-1(a), excusable neglect, and (f), any other reason justifying relief from the operation of the judgment or order, did not apply to defendant's motion, the motion did in fact raise arguments implicating those provisions. To obtain relief under Rule 4:50-1(a), a defendant must demonstrate both excusable neglect and a meritorious defense. Ibid. "'Excusable neglect' may be found when the default was 'attributable to an honest mistake that is compatible with due diligence or reasonable prudence.'" U.S. Bank Nat. Ass'n v. Guillaume, 209 N.J. 449, 468 (2012) (quoting Mancini, 132 N.J. at 335). To determine if a defense is meritorious, courts "must examine defendant's proposed defense." Bank of New Jersey v. Pulini, 194 N.J. Super. 163, 166 (App. Div. 1984).

We conclude the court misapplied its discretion by determining defendant failed to establish excusable neglect. Defendant was out of the country caring for her elderly father who was seriously ill from September 28, until November 24, 2021. It was during this time plaintiff applied to enter default and served notice of default by delivering it to their marital residence despite knowing defendant was out of the country and would not receive the notice. Defendant contends she did not receive the notice when she returned. Moreover, upon receipt of the notice of the default hearing, defendant requested an adjournment

16

to allow her to retain an attorney and then appeared at the default hearing to make the same request. Considering the totality of the circumstances, we are satisfied defendant established excusable neglect pursuant to Rule 4:50-1(a).

We also conclude defendant set forth meritorious defenses to plaintiff's claims for relief. Rule 4:43-2(b) provides "[i]f, to enable the court to enter judgment . . . it is necessary to . . . determine the amount of damages[,] . . . the court . . . on notice to the defaulting defendant[,] . . . may conduct such proof hearings . . . as it deems appropriate." Generally, after a default, a plaintiff is entitled to "all of the damages" that can be "prove[n] by competent, relevant evidence." Heimbach v. Mueller, 229 N.J. Super. 17, 28 (App. Div. 1988).

Defendant contends the court erred by accepting plaintiff's unsupported and false testimony regarding her income and his impermissible lay opinion regarding the value of her dental practice. We are convinced the court's findings regarding defendant's imputed income and the value of her dental practice were not supported by competent, relevant evidence in the record.

Plaintiff's claim that defendant could earn $190,000 as a full-time dentist was based on his "looking at numbers on Google and stuff" and a "printout from the [i]nternet" that showed dentists in Middlesex County earn approximately $147,000 to $253,000 annually. This testimony was inadmissible hearsay, in

17

addition to being patently unreliable, and was not the type of competent, reliable evidence necessary to support the entry of default judgment. See ibid.

Plaintiff's testimony was also contradicted by exhibits submitted with his own application. He testified defendant made up to $170,000 in the past. In fact, plaintiff did not provide any evidence defendant ever earned $170,000 per year. The documents he submitted showed she earned approximately $156,000 in 2018 and $148,000 in 2019. Plaintiff therefore failed to offer competent, reliable evidence that defendant's historical earnings supported the imputed income awarded.

Plaintiff also failed to offer evidence sufficient to find defendant chose to work part time and could have simply converted to full-time employment as a dentist. Plaintiff did not provide any support for this claim other than his testimony that he did not know of any reason why she could not. According to defendant, however, she never turned patients away and was doing as much work as her practice allowed. She also contended health issues relating to her hands and legs interfere with her ability to practice dentistry. We are satisfied defendant established the existence of meritorious defenses to plaintiff's request for imputed income that were not considered by the court when it decided the motion to vacate.

A-0436-22

We also conclude defendant established a meritorious defense to plaintiff's proposed valuation of her dental practice. Plaintiff is not an expert and was not qualified to offer an opinion on the value of the practice. See Lavene v. Lavene, 148 N.J. Super. 267, 276 (App. Div. 1977) (noting parties generally "must secure the assistance of appropriate experts to appraise business interests"). His $220,000 valuation was based on his purported "knowledge of the business" and the fact that it was originally purchased for $150,000. Defendant argued in support of her motion to vacate that, in addition to plaintiff's obvious lack of qualifications to opine on the value of a dental practice, he failed to consider the historical earnings of the practice, that it does not own the premises, and that the equipment it does own is old and outdated. Plaintiff failed to introduce competent, reliable evidence to support his valuation of defendant's dental practice. We are persuaded defendant established the existence of meritorious defenses to plaintiff's valuation of her dental practice that were not considered by the court when it decided the motion to vacate.

Even without a showing of excusable neglect, we conclude the court was required to vacate the default judgment considering the facts and circumstances of this case because enforcement of the judgment would be unjust, oppressive, and inequitable. The failure to establish excusable neglect under Rule 4:50-1(a)

19

does not automatically act as a barrier to vacating a default judgment pursuant to Rule 4:50-1(f) where the equities indicate otherwise.

Subsection (f) of Rule 4:50-1, the "catchall" category, allows the court to vacate a final judgment for "any other reason justifying relief from the operation of the judgment or order." "No categorization can be made of the situations which would warrant redress under subsection (f). . . . [T]he very essence of [subsection] (f) is its capacity for relief in exceptional situations. And in such exceptional cases[,] its boundaries are as expansive as the need to achieve equity and justice." Court Inv. Co. v. Perillo, 48 N.J. 334, 341 (1966); see also DEG, LLC v. Twp. of Fairfield, 198 N.J. 242, 269-71 (2009). To obtain relief under subsection (f), the movant must demonstrate the circumstances are exceptional, and enforcement of the order or judgment "'would be unjust, oppressive, or inequitable.'" City of E. Orange v. Kynor, 383 N.J. Super. 639, 646 (App. Div. 2006) (quoting Johnson v. Johnson, 320 N.J. Super. 371, 378 (App. Div. 1999)).

Given the court's mistaken consideration of plaintiff's incompetent, unreliable evidence regarding imputation of income and the value of defendant's dental practice, which formed the basis for the monetary relief granted in the FJOD, defendant satisfied her burden to show exceptional circumstances, and that enforcement of the default judgment would be unjust, oppressive, and

inequitable.  See Morales v. Santiago, 217 N.J. Super. 496, 504-05 (App. Div. 1987) (vacating judgment pursuant to Rule 4:50-1(f) after a proof hearing due to "misgivings" about the merits of plaintiff's claim even though defendant's attorney had not adequately presented defendant's case on the motion to vacate).

We reverse the August 26, 2022 order denying defendant's motion for reconsideration and vacate the April 28, 2022 FJOD.  We also vacate the March 10, 2023 order because the relief granted was dependent on the FJOD.  Having vacated the FJOD, we need not reach defendant's contention the court failed to apply and analyze the statutory factors applicable to equitable distribution, spousal support, and child support.  Of course, the court must consider all applicable factors in connection with future proceedings.  On remand, defendant may move to vacate default and file a contesting answer, including without limitation a claim for spousal support.  We do not express any opinion on the merits or disposition of such a motion if it is filed.

Reversed.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0436-22